UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE BOND and RICHARD JAMES BURKHART, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>          v.<br><br>FERGUSON ENTERPRISES, INC., a corporation, and DOES 1-50, inclusive,<br><br>        Defendants. | 1:09-cv-01662 OWW MJS<br><br>MEMORANDUM DECISION RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 29) |

## I. INTRODUCTION

Plaintiffs Lee Bond and Richard Burkhart bring this action on behalf of themselves and approximately 548 current and former truck drivers employed by Defendant in California from July 17, 2005 for alleged violations of state wage-and-hour laws. *See* Putative Class Action Complaint ("Complaint"), Doc. 2-2, Ex. A.

The parties have entered into a Joint Stipulation of Class Action Settlement Agreement ("Settlement"). Doc. 30, Ex. 1. Under the terms of the Settlement, the parties seek: (1) preliminary approval of the Settlement; (2) provisional certification of the Settlement Class; (3) appointment of Plaintiffs as Class Representatives; (4) appointment of Ackermann & Tillage, P.C. and Wasserman, Comden, Casselman & Esensten, L.L.P. as Class Counsel; (5) approval of the parties' proposed

1

form and method of notifying Class Members of the Settlement; (6)

an order scheduling the hearing date for final approval of the

class settlement; and (7) entry of a preliminary approval order.

Plaintiffs filed a Motion for Preliminary Approval of Class

Action Settlement on December 15, 2010. Doc. 29. Defendants filed

a Statement of Non-Opposition to the Settlement on January 10,

2011. Doc. 33.

## II. BACKGROUND

Plaintiffs allege that Defendant failed to provide timely

off-duty meal periods; failed to pay for missed, on-duty and

untimely meal periods; failed to provide accurate itemized wage

statements; and failed to pay all wages due upon termination or

separation of employment. Plaintiffs sought to certify a class

composed of themselves and similarly situated individuals, and

sought declaratory relief and recovery of back wages, interest,

penalties, attorneys' fees, and costs. *See* Complaint.

From November 2009 through the day of the settlement

negotiation, the parties conducted extensive formal and informal

discovery concerning Defendant's policy and practices.

Plaintiffs' counsel undertook an extensive review of the

information amassed during discovery, including: (1) analysis of

thousands of documents produced by Defendant, including time

records and payroll data for 34 class members and Defendant's

employment records; (2) analysis of Defendant's legal arguments;

2

(3) obtaining more than thirty sworn declarations from former and current truck drivers of Defendant; (4) taking the Rule 30(b)(6) deposition of Defendant's corporate representative; (5) analysis of class-wide violation rates on the automatic deduction and meal break claims on the basis of a sample of thirty-four class members; (6) analysis of class-wide violations and damages on derivative claims; and (7) research of the applicable law with respect to Plaintiffs' claims. Harnett Decl., Doc. 31 ¶ 4.

## III. SUMMARY OF THE SETTLEMENT.

The case was resolved with the aid of a mediator, Gig Kyraicou. The Settlement covers approximately 548 current and former truck drivers employed by Defendant in California from July 17, 2005 to the date the court enters an Order of Preliminary Approval ("Class Period"), excluding new truck drivers hired after November 3, 2010 and 46 truck drivers who previously signed severance release agreements prior to the filing of the lawsuit ("Class Members").

### A.   Gross Settlement Amount.

Under the Settlement, Defendant will pay up to $2.25 million ("Gross Settlement Amount"). This total sum will cover:

- settlement awards to be paid to Class Members who timely submit valid claims ("Settlement Awards");

- any payroll withholding on the Settlement Awards;

- the Settlement Administrator's reasonable fees and expenses (no more than $18,000);

- (subject to court approval) payments to Plaintiffs, in addition to their Settlement Awards, of $11,250 each in compensation of their services as Class Representatives;

- and (also subject to court approval) payments to Class Counsel of no more than 30% of the Gross Settlement Amount, or $675,000, for their reasonable attorneys' fees, as well as litigation costs, up to $10,000.

*See* Settlement, Doc. 30, Ex. 1, § 6. There will be no reversion of the Gross Settlement Amount to Defendant.

B.  __Payment of Settlement Awards.__

After the other amounts are deducted, the balance of the Gross Settlement Amount, approximately $1,524,500 (the "Net Settlement Amount") will be distributed to all Class Members who timely submit valid claims ("Claimants"), based upon the following allocation formula:

> The dollar amount payable to each member of the Class will be calculated by taking the "Potential Gross Individual Settlement Proceeds", i.e., the "Net Settlement Amount" (estimated to be slightly more than $1,500,000) divided by the total number of weeks worked by all members of the Class during the Class Period, and then multiplied by the total number of weeks worked by each individual member of the Settlement Class.

Settlement, Doc. 30, Ex. 1, § 7(a). A Claim Form, which will be mailed to Class Members with the Notice of Proposed Class Action

Settlement and Fairness Hearing ("Notice"), will include for each Class Member the number of weeks actively worked during the Class Period and the Class Member's estimated Settlement Amount. Ackermann Decl., Doc. 31, ¶ 52.

For tax purposes, one-third (1/3) of each Settlement Award will be deemed wages and two-thirds (2/3) will be treated as penalties and interest. Settlement Awards will be subject to the applicable tax withholding and reporting. Settlement, § 7(c).

The formula relies upon objective evidence of the number of weeks worked during the Class Period. Class Members can review and confirm this information, and the Claim Form permits Class Members to challenge the number of weeks worked. Settlement, § 7(e).

C.   Distribution of Unclaimed Funds and Uncashed Checks.

If less than 60% of the Gross Settlement Amount is claimed and distributed to all Claimants, then each Claimant's Settlement Award will be proportionately increased, up to a maximum of 1.5 times their original Settlement Award, until the total individual Settlement Awards equals 60% of the Net Settlement Amount. If the combined total of all Claimants' Settlement Awards at 1.5 times the original amount is still less than 60% of the Gross Settlement Amount, the balance of the funds will be paid to a 501(c)(3) nonprofit organization, to be agreed upon by the parties and approved by the court. Settlement, § 6(a).

1

**D.    Scope of the Release.**

2

      The Settlement provides that all Class Members other than

3

those who elect not to participate in the Settlement shall have

4

released the "Released Parties" from the "Released Claims." The

5

Notice contains the following release:

6

7

            For purposes of this Notice and the Settlement Agreement,
            the "Released Claims" of the Settlement Class are defined

8

            as: All claims, demands, rights, liabilities, and causes
            of action, whether brought directly, representatively, or

9

            in any capacity, that were or could have been asserted in
            the Lawsuit based upon the facts alleged therein, whether

10

            in tort, contract, statute, rule, ordinance, order,
            regulation, or otherwise, including state, federal, and

11

            local laws, whether for economic damages, non-economic
            damages, restitution, penalties, punitive damages, wages,

12

            premium payments, liquidated damages, attorneys' fees, or
            any other type of recovery thereon, arising out of any

13

            act, omission, transaction, or event that occurred or is
            alleged to have occurred up to the date of this Agreement.

14

            Claims specifically included in this release without
            limitation are those for alleged failure to provide meal

15

            or rest breaks, alleged failure to pay for all hours
            worked based on the application of an "automatic lunch

16

            deduction" (including claims for unpaid overtime, whether
            known or unknown, arising during the Class Period for the

17

            Class Members based on the claims reasonably related to
            those alleged in the Lawsuit), alleged failure to provide

18

            accurate itemized wage statements, alleged failure to
            provide timely pay upon termination, alleged unfair

19

            competition by means of the foregoing, and any other
            claims arising out of alleged failure to pay wages or

20

            penalties or for any other claims asserted in the Lawsuit.
            This release shall be in addition to, and not in lieu of,

21

            any release previously executed by any member of the
            Settlement Class.

22

23

            With respect to the Released Claims, Plaintiffs and the
            members of the Settlement Class stipulate and agree that,

24

            upon the effective date of the settlement, all of them
            shall be deemed to have, and by operation of the Final

25

            Judgment shall have, expressly waived and relinquished, to
            the fullest extent permitted by law, the provisions,

26

            rights and benefits of Section 1542 of the California

27

28

                                    6

Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members shall fully and finally release and discharge Ferguson, and each of their past, present, or future officers, directors, owners, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers, and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents, and each of their company-sponsored employee benefit plans, and all of their respective officers, directors, employees, administrators, fiduciaries, trustees, and agents ("Released Parties"), from the Released Claims.

Notice, Doc. 30, Ex. 1-A, § 5.

E.    <u>Objections and Opt-Out Process</u>

Any Class Member who so wishes may object or elect not to participate in the Settlement. The Notice fully explains the objection and opt-out procedures. Notice, § 3.

F.    <u>Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.</u>

By a motion to be filed prior to the Final Approval Hearing, Plaintiffs and their counsel will seek:

- payments to Plaintiffs, in addition to their Settlement Awards, of $11,250 each in compensation of their services as Class Representatives; and

- payments to Class Counsel of no more than 30% of the Gross

7

Settlement Amount, or $675,000, for their reasonable

attorneys' fees, as well as litigation costs, up to

$10,000.

Settlement, § 6(b), (d).  The exact amounts requested, and their

justification, will be detailed in a motion, brief, and

declaration to be provided in conjunction with the final approval

of the settlement and are subject to the court's final review and

approval.

### IV. DISCUSSION

**A.   Request for Conditional Certification of a Class for Settlement.**

Plaintiffs request certification of the Class under Rule

23(c)(1) which permits a court to "make a conditional

determination of whether an action should be maintained as a

class action, subject to final approval at a later date." *Fry v.*

*Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000).

Conditional certification requires satisfaction of the pre-

requisites of Rule 23(a) and (b). *Id*.

**1.   Rule 23(a) Requirements.**

Federal Rule of Civil Procedure 23(a) states in pertinent

part that "[o]ne or more members of a class may sue or be sued as

representative parties on behalf of all."  As a threshold matter,

in order to certify a class, a court must be satisfied that

> (1) the class is so numerous that joinder of all members
> is impracticable (the "numerosity" requirement); (2)

1
2
3
4
5

> there are questions of law or fact common to the class
> (the "commonality" requirement); (3) the claims or
> defenses of representative parties are typical of the
> claims or defenses of the class (the "typicality"
> requirement); and (4) the representative parties will
> fairly and adequately protect the interests of the class
> (the "adequacy of representation" requirement).

6

*In re Intel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal.

7

1981)(citing Fed. R. Civ. P. 23(a)).

8

       a.   <u>Numerosity.</u>

9

     A proposed class must be "so numerous that joinder of all

10

members is impracticable." Fed. R. Civ. P. 23(a)(1). The

11

numerosity requirement demands "examination of the specific facts

12

of each case and imposes no absolute limitations." *Gen. Tel. Co.*

13

*of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

14

15

     Here, the proposed class is comprised of all individuals who

16

have been employed by Defendant in California as truck drivers

17

from July 17, 2005 to the date the court enters an Order of

18

Preliminary Approval, excluding new truck drivers hired after

19

November 3, 2010 and 46 drivers who previously signed severance

20

release agreements prior to the filing of this lawsuit. There are

21

approximately 548 Class Members. Courts have routinely found the

22

numerosity requirement satisfied when the class comprises 40 or

23

more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114

24

(S.D.N.Y. 1998). Numerosity is also satisfied where joining all

25

class members would serve only to impose financial burdens and

26

clog the court's docket. *In re Intel Secs. Litig.,* 89 F.R.D. at

27

28

112. Here, the joinder of approximately 548 individual current and former employees would only further clog this court's already overburdened docket.

>        b.    Commmon Questions of Fact and Law.

Rule 23(a) also demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It does not require that all questions of law or fact be common to every single member of the class. To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000). Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, potential Class Members share the following legal and factual questions:

- Whether Defendant automatically deducted thirty minutes worth of working time on the basis of the unverified assumption that truck drivers always took a half-hour, off-duty meal break and *in lieu* of keeping contemporaneous or accurate meal break records;

- Whether Defendant failed to compensate truck drivers for missed or untimely meal breaks with an extra hour of premium

10

pay;

- Whether Defendant failed to implement a systematic daily method of relieving Class Members of their duties for meal breaks;

- Whether Defendant failed to pay former employees all wages due at termination; and

- Whether the above practices violate the Labor Code and Wage Orders.

These common questions of law or fact shared by all prospective class members are sufficient to satisfy the commonality requirement.

        c.    <u>Typicality.</u>

Rule 23(a)(3) demands "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied if the representatives' claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1463 (9th Cir. 1995)(claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Because every class member was paid under the same pay practices as every other class member, the Class Representatives' claims are typical of those of the other Class Members. The

11

1    typicality requirement is satisfied.

2
          d.    Fair & Adequate Representation.
3
4         The final Rule 23(a) prerequisite is satisfied if "the

5    representative parties will fairly and adequately protect the

6    interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper

7    resolution of this issue requires that two questions be

8    addressed: (a) do the named plaintiffs and their counsel have any

9    conflicts of interest with other class members and (b) will the

10   named plaintiffs and their counsel prosecute the action

11   vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec.*

12   *Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).
13
14        All requirements are satisfied here. Proposed class counsel,

15   Craig J. Ackerman, Esq., of Ackerman & Tilajef, P.C., and Melissa

16   M. Harnett, E  sq., of Wasserman, Comden, Casselman & Esensten,

17   L.L.P., have significant experience litigating class actions,

18   serving as class counsel, representing plaintiffs, and wage and

19   hour litigation. *See* Harnett Decl., Doc. 31, ¶¶ 13-32, Ackermann

20   Decl., Doc. 30, ¶¶ 70-71. Proposed Class Counsel have no

21   conflicts with the class (Harnett Decl., Doc. 31, ¶¶ 5, 7), and

22   have devoted a significant amount of time to the lawsuit

23   (Ackerman Decl., Doc. 30, ¶ 72; Harnett Decl., Doc. 31, ¶ 11).
24
25        In addition, the Class Representatives' interests are

26   completely aligned with those of the class. The Class

27   Representatives' interest is in maximizing their recovery.
28
                                   12

Although they will each receive an additional $11,250, this amount is reasonable compensation for the time and expense they devoted to pursuing this case. *See* Harnett Decl., Doc. 31, ¶ 9.

        2.    Certification of a Class under Rule 23(b)(3).

        Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified only if the class action satisfies the superiority requirements of Rule 23(b)(1), (b)(2), and/or (b)(3). Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

B.    Preliminary Approval of the Settlement.

        In reviewing the settlement, although it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings, and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). The court should also watch for collusion between class counsel and defendants. *Id*. Preliminary approval of a

settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (adding numbers). The Settlement proposed by the parties meets this test.

### 1.   The Settlement Was the Product of Informed, Arm's Length Negotiations.

The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. Plaintiffs' counsel had access to thousands of documents, including trip manifests, payroll data, and Defendant's employment policies, and obtained more than thirty sworn declarations from former and current employees of Defendant. Harnett Decl., Doc. 31 ¶ 4. The parties participated in mediation with an impartial mediator. The Settlement is the product of non-collusive negotiations.

### 2.   The Proposed Settlement Has No "Obvious Deficiencies."

The Settlement provides for a payment of $2.25 million by Defendants, which is substantial given the size of the class (548

Class Members) and limited nature of the alleged violations at issue. All Settlement Amounts to be paid under the Settlement are determined by the number of weeks each Class Member worked during the Class Period. The provision for a 60% floor on distribution of the Gross Settlement Amount, adjustment of each Claimant's Settlement Award, and donation of excess proceeds to charity is appropriate, fair, and ensures that all of the Net Settlement Amount is directed to Class Members to the extent administratively possible.

The Class Representative payments and the Class Counsel attorneys' fees payment are appropriate, and are subject to court approval at the final approval hearing. The expected Settlement Administrator's fees and costs of approximately $18,000 is reasonable.

   3.   **The Settlement Falls Well Within the Range of Possible Approval.**

To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

If the litigation proceeds, Plaintiffs would face significant risks. For example, the primary cause of action in this case revolves around the provision of meal periods. However, the meaning of an employer's obligation to provide meal

periods under California law is currently before the California

Supreme Court. *See Brinker Rest. Corp. v. Superior Court*

*(Hohnbaum)*, 165 Cal.App.4th 25 (2008) (review granted)).  A

defense ruling in *Brinker* could impair Plaintiffs' ability to

proceed on these causes of action.

Even if Plaintiffs were to prevail, they would be required

to expend considerable additional time and resources potentially

outweighing any additional recovery obtained through successful

litigation. In addition, continued litigation would delay payment

to the Class Members and increase the amount of attorneys' fees.

In light of these risks, the significant recovery is fair,

reasonable, and adequate and is in the best interest of the Class

Members in light of all known facts and circumstances.

4.   <u>The Release Is Too Broad.</u>

As part of the Settlement, Class Members will be deemed to

have released "[a]ll claims, demands, rights, liabilities, and

causes of action, whether brought directly, representatively, or

in any capacity, that were or could have been asserted in the

Lawsuit based upon the facts alleged therein, whether in tort,

contract, statute, rule, ordinance, order, regulation, or

otherwise, including state, federal, and local laws, whether for

economic damages, non-economic damages, restitution, penalties,

punitive damages, wages, premium payments, liquidated damages,

attorneys' fees, or any other type of recovery thereon, *arising*

16

*out of any act, omission, transaction, or event that occurred or
is alleged to have occurred up to the date of this Agreement*."
Notice, § 5 (emphasis added). The release does not appropriately
track the extent and breadth of Plaintiffs' allegations in this
case and releases unrelated claims of any kind or nature that
class members may have against defendants. This form of release
is overbroad by arguably releasing all unrelated claims up to the
date of the Agreement (the full language of the release is on
Page 6 of this Memorandum Decision).

        5.   Collusion.

        There is no evidence of collusion here.


        The settlement is preliminarily approved as fair and
reasonable, subject to a narrowing of the release.

C.   Proposed Class Notice & Administration.

        "Adequate notice is critical to court approval of a class
settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class
action settlement notice "is satisfactory if it generally
describes the terms of the settlement in sufficient detail to
alert those with adverse viewpoints to investigate and to come
forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361
F.3d 566, 575 (9th Cir. 2004)(internal quotations and citations
omitted).

        Here, the proposed Notice (Doc. 30, Ex. 1-A) and the manner

of notice agreed upon by the parties (Settlement, § 5) is "the best notice practicable," as required under Rule 23(c)(2)(B). All Class Members can be identified and the Notice and related materials (Claim Form and Request for Exclusion Form) will be mailed directly to each Class Member. The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Settlement, and how to make a claim under the Settlement, object to or comment on the Settlement, or elect not to participate in the Settlement. Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class Representative payments, Class Counsel Attorneys' fees, and Class Counsel litigation expenses that Plaintiffs and Class Counsel will seek, and explains how to obtain additional information regarding the action and the Settlement.

    Within 5 days after the court grants preliminary approval of the Settlement, Defendant will provide the Settlement Administrator with an updated list containing names, social security numbers, dates of employment, weeks worked during the Class Period and last-known addresses for each member of the Settlement Class. Settlement, § 9(b). The Settlement Administrator will mail the Notice, Claim Form, and Request for Exclusion to Class Members within 21 days following the preliminary approval. The Claim Form includes each individual Class Member's weeks worked and estimated Settlement Award based

on a 100% claim rate. Class Members may challenge and seek correction of the number of weeks worked during the Class Period. Class Members must submit and postmark their Claim Form no later than 45 days after the Notice is mailed. *Id.* at § 5(c). The Settlement Administrator will resend improperly completed Claim Forms; and Class Members who receive a re-mailed Claim Form will have 30 days to correct, complete, and/or sign the Claim Form. *Id.* at § 9(c)(v).

The Settlement Administrator will provide weekly reports to Plaintiffs' and Defendant's counsel. *Id.* at § 9(c)(vii). Not later than 30 days prior to the final approval hearing, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members. *Id.* at § 9(c)(viii). The Settlement Administrator will supplement the declaration as necessary, and submit a final declaration no later than 3 business days prior to the final approval hearing. *Id.*

The procedures set forth in the Settlement provide the best possible notice to the Class Members.

D.    <u>Simpluris Inc. is an Appropriate Settlement Administrator.</u>

The parties have agreed upon and recommend that the court appoint Simpluris, Inc., to serve as the Settlement Administrator. Simpluris's proposed fee is up to $18,000. Ackermann Decl. ¶ 50.

1    E.    **Settlement Approval Schedule.**

2          The parties are to submit the following schedule for

3    approval of the Settlement:

| Date | Event |
|------|-------|
| | Preliminary approval |
| | Defendant to provide to Settlement Administrator with an electronic database containing Class Member contact information and data necessary to calculate settlement shares (5 days after preliminary approval) |
| | Settlement Administrator to mail Notice Packets to all Class Members (21 days after preliminary approval) |
| | Date for Settlement Administrator to contact Class Members who have not submitted Claim Forms to remind them of the upcoming deadline |
| | Last day for Class Members to comment on or object to Settlement and mail in Claim Form or Request for Exclusion (45 days after mailing of Notice packets), other than Class Members who receive a re-mailing of the Notice packets, who have 30 days |
| | Last day for Settlement Administrator to report to parties on Class Members who have elected not to participate in Settlement or who have submitted claims |
| | Last day for Settlement Administrator to serve on the parties and file with the court preliminary statement of due diligence in complying with its obligations under the settlement (30 days before final approval hearing) |
| | Last day for Settlement Administrator to serve on the parties and file with the court final statement of due diligence in complying with its obligations under the settlement (3 business days before final approval hearing) |
| | Due date for motion for final approval of settlement and plaintiff's separate motion for class representative fee and class counsel's attorneys' fees and expenses |
| | Final approval hearing |

V. <u>CONCLUSION</u>

For all the reasons set forth above:

(1) The Settlement Class is conditionally certified;

(2) The Class Settlement is preliminarily approved;

(3) Craig J. Ackerman, Esq., of Ackerman & Tilajef, P.C., and Melissa M. Harnett, Esq., of Wasserman, Comden, Casselman & Esensten, L.L.P., are appointed Class Counsel;

(4) The named plaintiffs are appointed Class Representatives;

(5) Simpluris, Inc. is appointed Settlement Administrator;

(6) The class Notice and related materials are approved for distribution, subject to the narrowing of the release; and

(7) Plaintiffs shall submit a revised release and Settlement Approval Schedule within five (5) days of this decision.

Plaintiffs shall submit a form of order consistent with this decision within five (5) days following electronic service.

SO ORDERED
Dated: January 24, 2011

                                   /s/ Oliver W. Wanger
                                 Oliver W. Wanger
                           United States District Judge

21