1        UNITED STATES DISTRICT COURT

2      FOR THE EASTERN DISTRICT OF CALIFORNIA

3

| | |
|---|---|
| 4    LEE BOND, and RICHARD JAMES, | 1:09-cv-1662 OWW MJS |
| 5      Plaintiff, | [DRAFT] MEMORANDUM DECISION RE UNOPPOSED |
| 6      v. | MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| 7    FERGUSON ENTERPRISES, INC., | (DOC. 41) AND FOR ATTORNEYS' FEES AND COSTS |
| 8      Defendants. | (DOC. 48) |
| 9 | |

10

11                I. <u>INTRODUCTION</u>

12      This is a wage-and-hour class action brought on

13   behalf of truck drivers employed by Ferguson Enterprises

14   Inc., in Kern County, California. Declaration of Craig

15   Ackermann, Doc. 44 ¶ 12; *see also* First Amended Complaint

16   filed July 30, 2010. The action is brought on behalf of

17   Plaintiffs and approximately 548 current and former

18   employees of Defendants' from July 17, 2005 for alleged

19   violations of state wage-and-hour laws. *Id.*

20

21      The parties have entered into a Joint Stipulation of

22   Settlement Agreement. *See* Ackermann Decl., Doc. 30 at Ex.

23   1. A January 25, 2011 memorandum decision: (1)

24   conditionally certified a Settlement Class; (2)

25   preliminarily approved the Class Settlement; (3) Class

26   Counsel; (4) appointed Class Representatives; (5)

27   appointed a settlement administrator, (6) approved the

28

class Notice and related materials for distribution; and

(7) required plaintiffs to submit a form of order

consistent with the decision within five (5) days

following electronic service. Doc. 35. Plaintiffs have

filed a motion for final approval of the settlement,

Docs. 41-42, along with numerous supporting declarations,

Docs. 43-46. Plaintiffs have also moved for approval of

their request for attorneys' fees and costs, Docs. 48-49,

and filed the supporting declaration of Melissa M.

Harnett, Doc. 50. No objections to approval have been

received.

## II. BACKGROUND

Plaintiffs allege that Defendants failed to provide

timely off-duty meal periods; failed to pay for missed,

on-duty and untimely meal periods; failed to provide

accurate itemized wage statements; and failed to pay all

wages due upon termination or separation of employment.

Plaintiffs sought to certify a class composed of

themselves and similarly situated individuals, and sought

declaratory relief and recovery of back wages, interest,

penalties, attorneys' fees, and costs. *See* First Amended

Complaint ("FAC"), Doc. 21-1.

From November 2009 through the day of the settlement,

the Plaintiffs conducted substantial formal and informal

2

discovery concerning the Defendant's policy and
practices. Harnett Decl., Doc. 43 at ¶ 42. Among other
discovery, Plaintiffs served document requests seeking
information on the size of the Class and identity of each
of the Class members, and on Defendant's meal break
policies, including the persons responsible for
developing, implementing and monitoring Defendant's meal
break policies. *Id.* at ¶ 45. Defendants produced a
variety of responsive documents including all of its meal
and rest period policies and several other categories of
responsive documents, but objected to most of the class
discovery on the grounds that it violated the Class
Members' rights to privacy, and was premature and
irrelevant to a ruling on a class certification. Harnett
Decl., Doc. 31 at ¶ 46. Plaintiff's counsel reviewed the
information amassed during discovery including: analysis
of thousands of documents produced by Defendant,
including time records and payroll data for 34 class
members and Defendant's employment records; (2) analysis
of Defendant's legal arguments; (3) obtaining more than
thirty sworn declarations from former and current truck
drivers of Defendant; (4) taking the Rule 30(b)(6)
deposition of Defendant's corporate representative; (5)
analysis of class-wide violation rates on the automatic

deduction and meal break claims on the basis of a sample of thirty-four (34) class members; (6) analysis of class-wide violations and damages on derivative claims; and (7) research of the applicable law with respect to Plaintiffs' claims. *Id.* at ¶ 4.

### III. SUMMARY OF THE SETTLEMENT

The case was resolved with the aid of a mediator, Gig Kyraicou. The Settlement covers approximately 548 current and former truck drivers employed by Defendant in California from July 17, 2005 to the date the court enters an Order of Preliminary Approval ("Class Period"), excluding new truck drivers hired after November 3, 2010 and 46 truck drivers who previously signed severance release agreements prior to the filing of the lawsuit ("Class Members"). *See* Settlement, Doc. 30-1, Exhibit 1, § 6. There will be no reversion of the Gross Settlement Amount to Defendant; *see also* Declaration of Craig J. Ackermann, Doc. 30 at ¶ 48.

A. <u>Gross Settlement Amount.</u>

     Under the Settlement, Defendant will pay up to $2,500,000 ("Gross Settlement Amount"). This total sum will cover:

**4**

- settlement awards to be paid to Class Members who timely submit valid claims ("Settlement Awards");

- any payroll withholding on the Settlement Awards;

- the Settlement Administrator's reasonable fees and expenses (no more than $18,000);

- (subject to court approval) payments to Plaintiffs, in addition to their Settlement Awards, of $11,250 each in compensation of their services as Class Representatives;

- and (also subject to court approval) payments to Class Counsel of no more than 30% of the Gross Settlement Amount, or $675,000, for their reasonable attorneys' fees, as well as litigation costs, up to $10,000.

*See* Settlement, § 6. There will be no reversion of the Gross Settlement Amount to Defendant.

B.  <u>Payment of Settlement Awards.</u>

    After the other amounts are deducted, the balance of the Gross Settlement Amount, approximately $1,524,500 (the "Net Settlement Amount") will be distributed to all Class Members who timely submit valid claims ("Claimants"), based upon the following allocation formula:

> The dollar amount payable to each member of the Class will be calculated by taking the "Potential Gross Individual Settlement Proceeds", i.e., the "Net Settlement Amount" (estimated to be slightly more than $1,500,000) divided by the total number of weeks worked by all members of the Class during the Class Period, and then multiplied by the total number of weeks worked by each individual member of the Settlement Class.

Settlement, § 7(a). A Claim Form, which will be mailed to Class Members with the Notice of Proposed Class Action Settlement and Fairness Hearing ("Notice"), will include for each Class Member the number of weeks actively worked during the Class Period and the Class Member's estimated Settlement Amount. Ackermann Decl., Doc. 31 at ¶ 52.

For tax purposes, one-third (1/3) of each Settlement Award will be deemed wages and two-thirds (2/3) will be treated as penalties and interest. Settlement Awards will be subject to applicable tax withholding and reporting. Settlement, § 7(c).

The formula relies upon objective evidence of the number of weeks worked during the Class Period. Class Members can review and confirm this information, and the Claim Form permits Class Members to challenge the number of weeks worked. Settlement, § 7(e).

C.    <u>Distribution of Unclaimed Funds and Uncashed Checks.</u>

If less than 60% of the Gross Settlement Amount is claimed and distributed to all Claimants, then each

Claimant's Settlement Award will be proportionately

increased, up to a maximum of 1.5 times their original

Settlement Award, until the total individual Settlement

Awards equals 60% of the Net Settlement Amount. If the

combined total of all Claimants' Settlement Awards at 1.5

times the original amount is still less than 60% of the

Gross Settlement Amount, the balance of the funds will be

paid to a 501(c)(3) nonprofit organization, to be agreed

upon by the parties and approved by the court.

Settlement, § 6(a).

D.    **Scope of the Release.**

The Settlement provides that all Class Members other

than those who elect not to participate in the Settlement

shall have released the "Released Parties" from the

"Released Claims." The Notice contains the following

release:

> For purposes of this Notice and the Settlement
> Agreement, the "Released Claims" of the Settlement
> Class are defined as: All claims, demands, rights,
> liabilities, and causes of action, whether brought
> directly, representatively, or in any capacity, that
> were or could have been asserted in the Lawsuit based
> upon the facts alleged therein, whether in tort,
> contract, statute, rule, ordinance, order,
> regulation, or otherwise, including state, federal,
> and local laws, whether for economic damages, non-
> economic damages, restitution, penalties, punitive
> damages, wages, premium payments, liquidated damages,
> attorneys' fees, or any other type of recovery
> thereon, arising out of any act, omission,
> transaction, or event that occurred or is alleged to
> have occurred up to the date of this Agreement.

7

Claims specifically included in this release without limitation are those for alleged failure to provide meal or rest breaks, alleged failure to pay for all hours worked based on the application of an "automatic lunch deduction" (including claims for unpaid overtime, whether known or unknown, arising during the Class Period for the Class Members based on the claims reasonably related to those alleged in the Lawsuit), alleged failure to provide accurate itemized wage statements, alleged failure to provide timely pay upon termination, alleged unfair competition by means of the foregoing, and any other claims arising out of alleged failure to pay wages or penalties or for any other claims asserted in the Lawsuit. This release shall be in addition to, and not in lieu of, any release previously executed by any member of the Settlement Class.

With respect to the Released Claims, Plaintiffs and the members of the Settlement Class stipulate and agree that, upon the effective date of the settlement, all of them shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Section 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members shall fully and finally release and discharge Ferguson, and each of their past, present, or future officers, directors, owners, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers, and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents, and each of their company-sponsored employee benefit plans, and all of their respective officers, directors, employees,

8

administrators, fiduciaries, trustees, and agents ("Released Parties"), from the Released Claims.

*See* Notice, Doc. 30, Ex. 1-A, § 5.

E.   Objections and Opt-Out Process

Any Class Member who so wishes may object or elect not to participate in the Settlement. The Notice fully explains the objection and opt-out procedures. *See* Notice, § 3.

F.   Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.

The settlement also permits Plaintiffs and their counsel to seek by separate motion:

- payments to Plaintiffs, in addition to their Settlement Awards, of $11,250 each in compensation of their services as Class Representatives; and

- payments to Class Counsel of no more than 30% of the Gross Settlement Amount, or $675,000, for their reasonable attorneys' fees, as well as litigation costs, up to $10,000.

*See* Settlement, § 6(b), (d).

III. DISCUSSION

A.   Certification of a Class for Settlement

As the Class has only been conditionally certified,

9

final certification is required and is governed by
Federal Rule of Civil Procedure Rule 23.

    1.   **Rule 23(a) Requirements.**

    Federal Rule of Civil Procedure 23(a) states in
pertinent part that "[o]ne or more members of a class may
sue or be sued as representative parties on behalf of
all." As a threshold matter, in order to certify a class,
a court must be satisfied that

> (1) the class is so numerous that joinder of all
> members is impracticable (the "numerosity"
> requirement); (2) there are questions of law or
> fact common to the class (the "commonality"
> requirement); (3) the claims or defenses of
> representative parties are typical of the claims
> or defenses of the class (the "typicality"
> requirement); and (4) the representative parties
> will fairly and adequately protect the interests
> of the class (the "adequacy of representation"
> requirement).

*In re Intel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal.
1981)(citing Fed. R. Civ. P. 23(a)).

    a.   **Numerosity.**

    Here, the proposed class is comprised of all
individuals who have been employed by Defendant in
California as truck drivers from July 17, 2005 to January
25, 2011, excluding new truck drivers from November 3,
2010 and 46 drivers who previously signed severance
release agreements prior to the filing of this lawsuit.
There are approximately 548 Class Members. Courts have

routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Numerosity is also satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket. *In re Intel Secs. Litig.,* 89 F.R.D. at 112. Here, the joinder of approximately 548 individual former employees would only further clog this court's already overburdened docket.

    b.    Common Questions of Fact and Law.

Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). It does not require that all questions of law or fact be common to every single member of the class. To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).

Here, Class Members share the following legal and factual questions:

        • Whether Defendant automatically deducted thirty

11

minutes worth of working time on the basis of
the unverified assumption that truck drivers
always took a half-hour, off-duty meal break and
in lieu of keeping contemporaneous or accurate
meal break records;

- Whether Defendant failed to compensate truck
  drivers for missed or untimely meal breaks with
  an extra hour of premium pay;

- Whether Defendant failed to implement a
  systematic daily method of relieving Class
  Members of their duties for meal breaks;

- Whether Defendant failed to pay former employees
  all wages due at termination; and

- Whether the above practices violate the Labor
  Code and Wage Orders.

Every Class Member was paid under the same pay
practices as every other class members. The commonality
requirement is satisfied.

c.   Typicality.

Typicality is satisfied if the representatives'
claims arise from the same course of conduct as the class
claims and are based on the same legal theory. *See, e.g.,*
*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir.
1995)(claims are typical where named plaintiffs have the

same claims as other members of the class and are not subject to unique defenses). Because every class member was paid under the same pay practices as every other class member, the Class Representatives' claims are typical of those of the other Class Members. The typicality requirement is satisfied.

      d.   **Fair and Adequate Representation.**

The final Rule 23(a) requirement is that the class representative fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000).

Both requirements are satisfied here. Class counsel, Craig J. Ackermann, Esq., of Ackermann & Tilajef, P.C., and Melissa M. Harnett, Esq., of Wassermand, Comden, Casselmand & Esensten, L.L.P, have significant experience litigating class actions, serving as class counsel, representing plaintiffs in wage and hour litigation. *See* Harnett Decl., Doc. 31, ¶¶13-32. Ackermann Decl., Doc.

13

30, ¶¶70-71. Class counsel have no conflicts with the class, Harnett Decl., Doc. 31, ¶¶ 5, 7, and have devoted a significant amount of time to the lawsuit, Ackermann Decl., Doc. 30, ¶ 72; Harnett Decl., Doc. 31, ¶ 11.

In addition, the Class Representatives' interests are completely aligned with those of the class. The Class Representatives' interest is in maximizing their recovery. Although they will each receive an additional $11,250, this amount is reasonable compensation for their time and expense they devoted to pursuing this case. *See* Harnett Decl., Doc. 31, ¶ 9.

2. <u>Certification of a Class under Rule 23(b)(3).</u>

Once the threshold requirements of Rule 23(a) are satisfied, a class may be certified only if the class action satisfies the requirements of Rule 23(b)(1), (b)(2), and/or (b)(3). Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

14

B.   **The Terms of the Preliminary Approval Have Been Satisfied.**

The January 25, 2011 preliminary approval of the Settlement and conditional certification of the Class ordered that the Class be sent notice of the Settlement, approved the form of notice proposed by the parties, approved the forms of claims for settlement share and election not to participate, and set the hearing for final approval. Doc. 35. The Settlement Administrator, Simpluris, has carried out the preliminary approval order to the extent possible. *See generally* Bui Declaration, Doc. 40. On February 14, 2011, Class Notice Packets were mailed to class members to all five hundred and fifty-two (552) Class Members. *Id.* at ¶ 7. On March 11, 2011, the Settlement Administrator mailed a reminder to class members who had not yet submitted a Claim form or an Opt Out and to do so by the March 21, 2011 deadline. Bui Decl., Doc. 40, at ¶ 8. By April 21, 2011, one hundred and sixteen (116) Class Notice Packets were returned by U.S. Postal Service as undeliverable. *Id.* at ¶ 12. The Settlement Administrator remailed two-hundred and ninety-two (292) Class Notice Packets to either a newfound address, a forwarding address provided by the U.S. Postal Service, or to an address at the request of the Class Member. *Id.* Despite the Settlement Administrator's best

15

efforts, fifty-nine (59) Class Notice Packets remain undeliverable because the administrator was unable to find a deliverable address. *Id.*

Despite these difficulties, three-hundred and forty-two (342)(61.96%) claim forms were received and accepted by the Settlement Administrator. *Id.* at ¶ 14. As of April 22, 2011, the Settlement Administrator has received one (1) deficient Claim Form because they did not sign their form; two (2) untimely Claim Forms; and fifteen (15) opt-outs. *Id.* at ¶¶ 17-19. Additionally, no class member has submitted to an objection to the Settlement. *Id.* at ¶ 21.

C.   <u>Approval of the Settlement.</u>

"The court must approve any settlement ... of the claims ... of a certified class." Fed. R. Civ. P. 23(e)(1)(A). A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). Such approval is required to make sure that any settlement reached is consistent with plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The court also serves as guardian for the absent class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.* However, the district

court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 (9th Cir. 1996). Therefore, the settlement hearing is not to be turned into a trial or rehearsal for trial on the merits. *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice. *Id*.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors: (1) the strength of the Plaintiff's case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant.

*Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234,1242 (9th Cir. 1998). This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

     1.   **The Relative Strengths of the Parties' Cases Supports Approval of the Settlement.**

If the litigation proceeds, Plaintiffs would face significant risks. Ackermann Decl. at ¶¶ 66-9. For example, the primary issue in this case revolves around the provision of meal periods. However, the meaning of an employer's obligation to provide meal periods under California law is currently before the California Supreme Court (see *Brinkley v. Public Storage, Inc.*, 198 P.3d 1087, 87 Cal.Rptr 674 (Jan. 14, 2009) (review granted) and *Brinker Restaurant Corp. v. Superior Court*, 196 P.3d 216, 85 Cal.Rptr 388 (Oct. 22, 2008)(review granted). A defense ruling in Brinker could impair Plaintiff's ability to proceed on these causes of action.

Plaintiffs also face the risk that the class may not be certified. The issue of whether missed meal break claims for truckers may be certified is currently pending before the California Supreme Court in *Brinker*. If the Court adopts the Brinker standard, then class certification of Plaintiffs' missed meal break claims

18

would be more difficult. *See Brown v. Federal Express*,
249 FRD 580, 585 (C.D. Cal. 2008) (denying class
certification of employees alleging employers denied them
meal breaks and rest breaks, and failed to pay additional
one hour of pay to employees who missed meal breaks.)

In light of these risks, the significant recovery is
fair, reasonable, and adequate, and is in the best
interest of the Settlement Class in light of all known
facts and circumstances.

2.   The Settlement Amount is Fair and Reasonable.

The Settlement provides for a payment of up to
$2,250,000 by Defendants. The average settlement share is
$2,781.93 per employee. Ackermann Decl., Doc. 44 at ¶ 71.
All Settlement shares will be distributed to each
Claimant on the basis of the number of weeks actively
worked by each Claimant during the Class Period. Harnett
Decl., Doc. 43 at ¶ 60.

The Class Representative Payments and the Class
Counsel Attorneys' Fees Payment are appropriate, and are
separately approved below.

Finally, the expected Settlement Administrator's fees
and costs of approximately $18,000 are reasonable in
light of the amount of work achieved. *Id.* at ¶ 64.

3.     **The Release is Appropriate.**

As part of the Settlement, Class Members release the following claims: "all wage and hour related claims, demands, rights, liabilities and causes of action, whether brought directly, representatively, derivatively, or in any capacity that were or could have been asserted in the Lawsuit based upon the facts alleged therein" "arising out of any act, omission, transaction, or event affecting wage and hour related rights that occurred or is alleged to have occurred up to the date of this Agreement." *See* Ackermann Decl., Doc. 44 at Exhibit A. These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.

4.     **The Settlement Was the Product of Informed, Arm's Length Negotiations.**

The Settlement was reached after informed, arm's length negotiations between the parties. *See* Ackermann Decl., Doc. 44 at ¶¶ 63-4. Plaintiffs' counsel had access to documents including all of the Defendant's meal and rest period policies, their database of timekeeping entries, and names and addresses of members of the class. *Id.* at ¶¶ 27, 31. Plaintiffs' counsel reviewed and

analyzed thousands of pages of material. *Id*. at ¶ 31.
Counsel was also informed by numerous interviews with
witnesses to the allegations. *Id*. at ¶ 32, 34. In
addition, there is no evidence of collusion.

     5.  **Reaction of the Class Members.**

   "The reactions of the members of a class to a
proposed settlement is a proper consideration for the
trial court." *Vasquez v. Coast Valley Roofing*, 266 F.R.D.
482 (E.D. Cal. 2010) (citing 5 Moore's Fed. Practice §
23.85[2][d]). Class Representative's opinion of the
settlement are especially important as "[t]he
representatives' views may be important in shaping the
agreement and will usually be presented at the fairness
hearing; they may be entitled to special weight because
the representatives may have a better understanding of
the case than most members of the class." Manual for
Complex Litigation, Third, § 30.44 (1995).

    Here, the Class Representatives strongly support the
settlement. *See* Declaration of Lee Bond, Doc. 45, at ¶ 8-
9; Declaration of James Burkhart, Doc. 46, at ¶ 8-9. Each
of these Class Representatives and their attorneys have
extensive understanding of the merits of this settlement
having participated extensively in the strategy,
formulation, filing, litigation and negotiation process.

*See* Bond Decl. at ¶ 3-8; Burkhart Decl. at ¶ 3-8. There have been no objections to the Settlement by Class Members or any other members of the public.

The settlement is fair and reasonable.

D.   <u>Class Counsel's Requested Fees and Costs.</u>

By separate motion, Plaintiffs' counsel also requests approval of payments for attorneys' fees and costs in the amount of $675,000 and $10,000, respectively.  Courts have long recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Awarding a percentage of the common fund is particularly appropriate "'when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.'" *Id.* (quoting *Boeing Co.,* 444 U.S. at 478-79).

Here, where the Settlement requires lump sum allocations to each Settlement Class and applies distribution formulas pursuant to which each Class Member who submits a valid claim will receive a mathematically ascertainable payment, application of the percentage of common fund doctrine is appropriate.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

Class Counsel seeks an attorney's fee award of $675,000, or thirty percent (30%), of the Maximum Settlement Value. When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the

23

contingent nature of the fee and the financial burden; and (f) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir.1990).

1.   The Results Achieved.

The individual claims in this case concerned defendants' failure to pay class members for missed, on-duty and untimely meal periods; unpaid wages on days when no off-duty meal break was taken; failure to pay all wages due upon termination or separation of employment; and failure to provide proper rest and meal periods. Such claims would not ordinarily produce large recoveries per claimant. Here, the recovery of up to $2,250,000 will provide the 383 claimants with an average recover of approximately $2,781.93 per claimant. Ackermann Decl., Doc. 44 at ¶ 71.

2.   The Risks Involved.

There was some risk in pursuing this case. One of the primary issues involved in this case has to do with the timely provision of rest and meal periods – an issue that is currently before the California Supreme Court in the *Brinker* and *Brinkley* cases. It is unknown what the outcome of the Supreme Court's decision will be an

24

adverse decision that could be prejudicial to the recovery in this case.

The Defendants also posed serious defenses to the claims. And defense counsel demonstrated that they were competent in defense of their client.

Plaintiffs' Counsel invested $587,315, in lodestar time and $10,000 in costs in litigating this case with no guarantee of recovery.

3.   **The Skill Required.**

This is a garden-variety wage and hour class action, focused primarily on meal breaks, which required more accounting analysis than actual legal resources.  The case required locating and contacting over 500 members of the class, communicating with over 250 class members to ensure they received appropriate forms, obtaining new contact information for some members of the class, directing the work of the settlement administrator and litigating cutting-edge legal theories surrounding rest and meal periods. Harnett Decl., Doc. 43 at ¶ 87. This is entirely administrative work that could be accomplished by paralegals. Class Counsel has extensive experience in class action wage and hour litigation of this nature. *See id.* at ¶¶ 5-28; Ackermann Decl., Doc. 44 at ¶¶ 4-11.

4.   **The Contingent Nature of the Fee and the Financial Burden.**

This case was conducted on a contingent fee basis against a well-represented Defendant. Counsel has received no money from plaintiffs or any other source to litigate this case. See Ackermann Decl. Doc., 43 at ¶¶ 78-89. The plaintiffs are all low-wage workers who could not meaningfully contribute to any such expenses. Plaintiffs' counsel accepted this risk. Class Counsel was effective in effectuating a $2,250,000 settlement.

5.   **Awards in Similar Cases.**

The requested fee is comparable to similar wage and hour cases litigated in the Central Valley. For example, this court has awarded the following fees:

- 33.3% in *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010), Case No. 1:07-cv-00227 OWW DLB;

- 30% in *Vasquez v. Aartman*, E.D. Cal. Case No. 1:02-CV05624 AWI LJO;

- 31.25% in *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729 AWI LJO;

- 33.3% in *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 AWI LJO;

26

- 33.3% in *Benitez, et al. v. Jeff Wilbur and Lisa Wilbur*, Case No. 1:08-cv-01122 LJO GSA;

- 33.3% in *Chavez, at al. v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA.

Based on the overall success, skill employed, legal risks associated with Plaintiffs' claims, the financial risks borne by Plaintiffs' Counsel, and similar awards made in similar cases, under a percentage-of-fund approach the requested attorney's fee award of 30% of the total recovery (or $675,000) is reasonable under the circumstances.

6.   Lodestar Cross-Check.

Calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. *Fernandez v. Victoria Secret Stores*, 2008 WL 8150856 (C.D. Cal 2008); *Vizacaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002). First, the court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Cunningham v. County of Los Angeles*, 879 F.2d 481 (9th Cir. 1988). Next, the court may increase or reduce the presumptively reasonable lodestar fee. *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1998) (*citing City of Riverside v. Rivera*, 477 U.S.

561 (1986)).

The billing records of Class Counsel Wasserman, Comden, Casselman & Esensten, L.L.P and Ackermann & Tilajef, P.C. reveal the following hours billed by thirteen lawyers and three paralegals:

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| Wasserman, Comden, Casselman & Esensten, L.L.P. | | | |
| Steven Wasserman, partner | 1.6 | $750 | $1,200.00 |
| Melissa Harnett, partner | 109.2 | $670 | $73,164.00 |
| Cathy Garcia, associate | 52.4 | $600 | $31,440.00 |
| Jesse Levin, associate | 229.2 | $290 | $66,468.00 |
| Scarlett, associate | 21.5 | $500 | $10,750.00 |
| Jordan Esensten, associate | 8 | $290 | $2,320.00 |
| Alan Juavan, paralegal | 181.4 | $180 | $32,652.00 |
| Andreas Nielsen, paralegal | 90.9 | $180 | $16,362.00 |
| Dale Gordon, paralegal | 78.6 | $180 | $14,148.00 |
| Susan House, | 9 | $180 | $1,620.00 |
| Ackermann & Tilajef, P.C. | | | |
| Craig Ackermann, partner | 123.5 | $550 | $67,925 |
| Tatiana Hernandez,  associate | 355.12 | $325 | $115,414 |
| Barry Goldstein, consultant | 16.2 | $725 | $17,617.50 |
| Rachelle Tsarovsky, associate | 70.9 | $325 | $23,043.50 |
| Charlie Stein, associate | 49.49 | $225 | $11,135.25 |
| Pablo Orozco, associate | 236.33 | $225 | $53,174.25 |
| Devin Coyle, associate | 7.7 | $225 | $1,732.50 |
| Akiva Feinstein, legal assistant | 152.6 | $175 | $26,705 |
| Rosie Salinas, paralegal | 96.3 | $150 | $14,445 |
| Jonathan Melmed | 40 | $150 | $6,000 |
| Total | 1929.94 | | $587,316.00 |

*See* Memorandum in Support of Plaintiff's Motion for Attorney's Fees and Costs, Doc. 49 at 11.

The number of hours billed in this case will not be approved. Although considerable discovery took place and preparation for mediation was required, similar cases have reached settlement with fewer than 500 billed hours of attorney time. *See Alvarado v. Nederend*, 1:08-cv-01099 OWW DLB (wage and hour class action involving

unsettled issues related to meal and rest breaks with approximately 150 class members reached settlement after Class Counsel expended fewer than 350 hours). No two cases have the exact same litigation requirements, but nothing in the record justifies more than five times the effort expended in *Alvarado*.

Likewise, the hourly rates presented by counsel are higher than normally permitted under federal law.[1] Prevailing hourly rates in the Eastern District of California are in the $400/hour range. One more general way to examine the reasonableness of hourly rates is to compare them to the Laffey Matrix, a widely recognized compilation of attorney and paralegal rate data used in the District of Columbia, frequently used in fee awards cases. The Laffey Matrix reflects a paralegal rate of $161, a 1-3 year lawyer rate of $294, a 4-7 year lawyer rate of $361, an 8-10 year lawyer rate of $522, an 11-19 year lawyer rate of $589, and a 20+ year lawyer rate of $709. The district court in *Fernandex v. Victoria Secret Stores*, LLC  2008 WL 8150856, *15 increased the Laffey Matrix amounts by the difference between the cost of

---

[1] These hourly rates were apparently approved without a written decision in *Padilla et al v. Young's Market Company*, LLC, 2:09-cv-08730 DMG RC (C.D. Cal. 2010) and separately in state court in *Williams v. BioTab Nutracuticals, Inc.,* et al., LASC Case No. BC 414808 (2011).  These cases have no precedential value, especially in a different District, where prevailing rates are lower.

living increase provided to Judicial branch employees in the Washington D.C. area and that provided to employees in the Los Angeles area. That difference is 2.94 percent as of the 2011 pay tables. Taking the top bracket as an example, the adjusted Laffey Rate for a 20+ year lawyer is $729 ($709 * 1.0294). Mr. Wasserman's rate of $750 is slightly higher than the adjudged Laffey Matrix for an attorney with 20+ years in practice. The $670 billed by Ms. Harnett is approximately 10 percent higher than the 11-19 year attorney rate of $606. The other employees of Wasserman, Comden, Casselman & Esensten, L.L.P. appear to be billing at similarly inflated rates. The hourly rates billed by Ackermann & Tilajef, P.C. seem more reasonable, although the $175/hour rate for a "legal assistant" is unjustified.

Because the lodestar is being used here as a cross-check, the court may use a "rough calculation of the lodestar," *Fernandez*, 2008 WL 8150856, it is appropriate to roughly haircut the lodestar. The hourly rates of the Wasserman, Comden, Casselman & Esensten, L.L.P. are least 10% over the appropriate Laffey Matrix levels, and are reasonably subject to a 10% haircut on that basis. Ackermann & Tilajef, P.C.'s rate billed for their legal assistant will be lowered to $100. This results in the

following recalculation of the lodestar.

| NAME | HOURS | RATE | ADJUSTED RATE | TOTAL |
|------|-------|------|---------------|-------|
| Wasserman, Comden, Casselman & Esensten, L.L.P. | | | | |
| Steven Wasserman, partner | 1.6 | $750 | $675 | $1,080 |
| Melissa Harnett, partner | 109.2 | $670 | $603 | $65,848 |
| Cathy Garcia, associate | 52.4 | $600 | $540 | $28,296 |
| Jesse Levin, associate | 229.2 | $290 | $261 | $59,821 |
| Scarlett, associate | 21.5 | $500 | $450 | $9,675 |
| Jordan Esensten, associate | 8 | $290 | $261 | $2,088 |
| Alan Juavan, paralegal | 181.4 | $180 | $162 | $29,387 |
| Andreas Nielsen, paralegal | 90.9 | $180 | $162 | $14,726 |
| Dale Gordon, paralegal | 78.6 | $180 | $162 | $12,733 |
| Susan House, | 9 | $180 | $162 | $1,458 |
| Ackermann & Tilajef, P.C. | | | | |
| Craig Ackermann, partner | 123.5 | $550 | $550 | $67,925 |
| Tatiana Hernandez, associate | 355.12 | $325 | $325 | $115,414 |
| Barry Goldstein, consultant | 16.2 | $725 | $725 | $17,617.50 |
| Rachelle Tsarovsky, associate | 70.9 | $325 | $325 | $23,043.50 |
| Charlie Stein, associate | 49.49 | $225 | $225 | $11,135.25 |
| Pablo Orozco, associate | 236.33 | $225 | $225 | $53,174.25 |
| Devin Coyle, associate | 7.7 | $225 | $225 | $1,732.50 |
| Akiva Feinstein, legal assistant | 152.6 | $175 | $100 | $15,260.00 |
| Rosie Salinas, paralegal | 96.3 | $150 | $150 | $14,445.00 |
| Jonathan Melmed | 40 | $150 | $150 | $6,000.00 |
| Total | 1929.94 | | | $550,859.00 |

The lodestar with adjusted hourly rates is $550,859.00. In addition, the hours billed are excessive and are reasonably subject to a 30% haircut, resulting in a total lodestar of $385,601.00

The amount requested by Class Counsel of $675,000.00 is greater than its lodestar amount of $385,601.00. However, adjustments to increase or decrease the lodestar amount are sometimes appropriate to justify use of a "lodestar multiplier." *Clark v. City of Los Angeles*, 803

F.2d 987, 991 (9th Cir. 1986); *see also Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel*, 307 F.3d at 1008 (*citing In re Washington Public Power Supply System Securities Litig. v. Continental Ins. Co.*, 19 F.3d 1291, 1299 (9th Cir. 2002)). Generally, a district court has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment. *Fischel*, 307 F.3d at 1008; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig. v. Exxon Corp.*, 109 F.3d 602 (9th Cir. 1997).

The "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. Fischel, 307 F.3d at 1008. Here, the multiplier of 1.75 is calculated by dividing $675,000.00 by $385,601.00. To determine whether the lodestar multiplier is reasonable the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the

preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 6 (9th Cir. 1975)).

First, Class Counsel achieved a good result and generated a significant benefit for the class amounting to the Maximum Settlement Amount of $2,250,000 for the benefit of a class of approximately 553 members. Based on the claims rate, the 342 Class Members who submitted claims will receive $952,018.56 in the aggregate, an average of $2,783.68. See Bui Decl., Doc. 40.

Second, Plaintiff's meal break claims presented arguable questions for Class Counsel because California's meal break law is currently in flux with *Brinker* currently pending before the California Supreme Court.

Third, Class Counsel competently performed. Class Counsel avoided protracted litigation by conducting

33

significant investigation of the class claims, and efficiently communicating and exchanging information with Defense counsel so that the parties could successfully mediate the case. In preparation for this case, Class Counsel investigated the potential claims and class members; comprehensively reviewed thousands of pages of documents; interviewed a number of current and former drivers of the Defendant; and deposed Defendant's corporate representative about a number of important topics. *See* Ackermann Decl., Doc. 44 at ¶ 36; Harnett Decl., Doc. 43 at ¶ 55.

Lastly, Class Counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. Harnett Decl., Doc. 43 at ¶ 92. There was no guarantee they would recoup their fees or costs. *Id.* Class Counsel has not received any payment for their time or their expenses, which they began incurring over two years ago. *Id.* Additionally, Class Counsel had to forego other work in order to maintain this case. *Id.*

Based on the overall success, the skill with which the case was prosecuted, the substantial legal risks associated with Plaintiffs' claims, and the financial risks borne by Plaintiffs' Counsel, Plaintiff's request for a multiplier of 1.75 of its lodestar is reasonable.

*See, e.g. Steiner v. Am. Broadcasting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007)(approving multiplier of 6.85 and citing cases with comparable or higher multipliers); *Vizcaino*, 290 F.3d at 1051 (finding no abuse of discretion in awarding a multiplier of 3.65).

E.    Class Counsel's Request for Costs.

    Class Counsel incurred out-of-pocket costs totaling approximately $11,364.46. The bulk of the incurred costs included Settlement Administrator fees for notice costs, payment to court reporters for depositions, mediation costs, legal research, and in-house copies of documents. *See* Acerkmen Decl., Doc. 44 at Exhibit 13. Such costs are routinely reimbursed in these types of cases. *See, In re United Energy Corp. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. 1989) (quoting Newberg, Attorney Fee Awards, § 2.19 (1987)); *see e.g. Vasquez*, 266 F.R.D. at 493 (Class Counsel litigation expenses payment of approximately $9,000 was fair and reasonable in similar case).

    Here, the actual costs incurred are greater than the estimated $10,000, which was included in the Class Notice and to which no Class Member objected. Plaintiff's request, which is capped at $10,000 is reasonable.

F.    Class Representative Enhancement.

    Pursuant to the Settlement, Plaintiff seeks an

35

enhancement in the amount of $7,500 to the named

Plaintiffs Lee Bond and Richard James Burkhart. Ackermann

Decl., Doc. 44 at ¶ 47. This payment is intended to

recognize the time and efforts that the named Plaintiffs

spent on behalf of the Class Members. *Id.; see also*

Declarations of Lee Bond and Richard James Burkhart,

Docs. 45-46.

"Courts routinely approve incentive awards to

compensate named plaintiffs for the services they provide

and the risks they incurred during the course of the

class action litigation." *Ingram v. The Coca-Cola

Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal

quotations and citations omitted). In *Coca-Cola*, the

Court approved service awards of $300,000 to each named

plaintiff in recognition of the services they provided to

the class by responding to discovery, participating in

the mediation process, and taking the risk of stepping

forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at

694; *see, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F.

Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000

participation award to plaintiffs); *Glass v. UBS

Financial Services, Inc.*, 2007 WL 221862, at *17 (N.D.

Cal. Jan. 26, 2007) (approving $25,000 enhancement to

each named plaintiff).

In this case, among other things, the named Plaintiffs: (1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class. See Declarations of Lee Bond and Richard James Burkhart, Docs. 45-46. Moreover, as with any plaintiff who files a civil action, Plaintiffs undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant. *See, e.g., Whiteway v. Fed Ex Kinkos Office & Print Services*, Inc., No. C 08-2320 SBA, 2007 WL 4531783, at **2-4 (N.D. Cal. Dec. 17, 2007).

G.   Claims Administrator Fee.

The Class Notice provided that the Claims Administrator would receive a few of up to $18,000 Plaintiffs request that the full amount of $18,000 be approved as Simpluris' fee. Doc. 41. The Declaration of Michael Bui, a Case Manager at Simpluris, explains the tasks undertaken by Simpluris to accomplish notify the

Class of the settlement and administer its terms. Mr. Bui estimates administration costs of $18,000, taking into consideration both costs incurred to date and those anticipated to be incurred in the future. This request is substantially lower than previous administrator fees awarded in this District. *See Vasquez*, 266 F.R.D.at 483-84 ($25,000 administrator fee awarded in wage and hour case involving 177 potential class members).

## IV. CONCLUSION

For all the reasons set forth above:

(1) The Settlement Class is CERTIFIED;

(2) The Class Settlement is APPROVED;

(3) The payment of $675,000 in attorney's fees (30% of the Maximum Settlement Value and $10,000 in costs is APPROVED;

(4) The payment of  $11,250 enhancement to each of the named Plaintiffs Lee Bond and Richard James Burkhart is APPROVED;

(5) The payment of $18,000 to the Settlement Administrator is APPROVED;

Plaintiffs shall submit a form of order consistent with this decision within five (5) days following electronic service.

38